May it please the Court. The District Court order denying Credit One's arbitration motion should be reversed for two reasons. First, both of plaintiff's challenges to the continued enforceability of the party's arbitration agreement are under the terms of the delegation clause in that agreement for the arbitrator to decide. And second, plaintiff's enforceability challenges on the grounds of assignment and waiver are also themselves meritless if the court considers them itself. Allow me to explain more fully on each issue. First, as to the delegation issue, we think the first and most important reason why arbitration should have been compelled here is a ground that the District Court ignored entirely. It did not say a single word about the delegation issue. Here, the plaintiff does not dispute that the parties validly entered into an arbitration agreement. Nor does plaintiff dispute that that arbitration agreement clearly and unmistakably delegates to the arbitrator all issues of the enforceability and interpretation of the arbitration agreement. And under Rent-a-Center, that separate antecedent agreement to arbitrate issues of enforceability and interpretation is one that the Federal Courts do not agree with. They say that that puts the cart before the horse. They say that before any agreement to arbitrate can be enforced, whether it's an agreement to arbitrate issues of the arbitration agreement's enforceability or whether it's the arbitration agreement in its entirety, the court first has to find that there was an arbitration agreement. That may be true, but it states the principle too far. The Supreme Court has made clear that the parties may delegate enforceability and interpretation issues. And that's what we have here. To use their metaphor, the horse that goes before the cart has been clarified by the Supreme Court in this court, what goes on in that, what I will call, using their metaphor, the horse inquiry. What the court and the Fourth Circuit have made clear is that the one thing that may not be delegated to the arbitrator is the question about whether the parties validly formed an arbitration agreement, whether the parties validly entered into an arbitration agreement. That is Rent-A-Center, footnote two, and Buckeye Check-Cashing, footnote one, which both talk about the one issue you can't give is whether the parties concluded an agreement. But it's also the Fourth Circuit's decision in Peabody-Cole, and I want to pause and explain that a little bit. In Peabody-Cole, what the Peabody-Cole, who was resisting arbitration in that case, said is there's actually a threshold issue why you can't even start to decide whether these issues are within the scope of the arbitration clause. They said that by virtue of a corporate divestment, Peabody-Cole was no longer subject to the arbitration agreement anymore. What this court said is no, that argument has nothing to do with the contract formation principle that the Supreme Court says that the courts have to decide. And to use this court's word, the court said because the parties agree that the agreement was valid when executed, this case is not governed by the principle that courts must decide principles of contract formation. The court said it's a duration issue. It's a question as to whether or not the arbitration agreement was still in effect. With respect, that tracks directly to this arbitration clause. There's never been a fight over that in this case. The argument here is that by virtue of a completely separate act, the assignment of the plaintiff's account, by virtue of that act, that the arbitration rights and the arbitration obligations that the parties had to one another have terminated. That's exactly what in Peabody-Cole the court said does not implicate a contract formation issue that always must remain with the court. And it's even more clear in this case than in Peabody-Cole because we have a delegation clause that says when we're talking about those types of issues of enforceability, so whether the arbitration agreement continues to be enforceable here, those are for the arbitrator. It's also more clear here because the argument that they make about assignment terminating the parties' arbitration rights and obligations to one another is an argument that that's true notwithstanding the survival clause of the very same arbitration agreement. And that clearly presents an interpretation issue that the parties, when they said we are going to delegate all enforceability and interpretation issues, that involves interpretation of that question. There is no other argument that they make in response to the argument that under Renta Center, the delegation clause here means that it goes to the arbitrator. The only argument they make is the cart before the horse argument. They do not make the argument that Renta Center says may be made, which is you may make a specific challenge to the validity of the delegation clause. Roman III, the argument heading in their brief says there are no questions about validity of this agreement here. The only argument is the cart before the horse argument. And we believe that the Supreme Court's case law and this court's case law clearly foreclosed that. Even if this court were to take up either of the enforceability challenges, we believe with all due respect to my opponent that they are meritless. Can I ask you, so what's the resolution if we should agree with you? The resolution should be that you reverse the district court, you order the case, and that you should direct the court to grant Credit One's motions under FAA sections three and four to stay the litigation and send it to arbitration. And the arbitrator decides everything. So you're not suggesting that the case is over? No, no. We're saying no, no, no. We're going to hear this in front of an arbitrator. I apologize. I do want to make one note. You didn't have any questions on the first argument, but I would be remiss if I didn't say. No, no. I have no questions about it, Judge Watts. I would be remiss if I didn't also say that three courts of appeals have taken up either the identical issue or a materially similar issue, and they all agree with our position. On pages 18 and 19 of our brief, we cite the Danley decision in the Sixth Circuit, and we cite the Kontek decision of the Second Circuit. The Danley decision is about the post-assignment enforceability of an arbitration clause, and under a delegation clause that reads identically to our clause here, that court said that's an issue for the arbitrator. The Kontek case is about a corporate successor, so not exactly an assignment, but whether the post-corporate succession enforceability of an arbitration agreement, and in that case also they said that goes to the arbitrator. While it's not cited in our brief, the Kontek decision cites a First Circuit decision, Apollo, which is from 1989, which has been in effect forever, that is the same as Danley. It's post-assignment enforceability of an arbitration agreement, and we cite at page 25 of our brief a magistrate report and recommendation which was adopted by a district court in the Alvarado case, which relies on all of these cases, and is the exact same situation as our case. It is a situation where the person who assigned the account is alleged to thereby have given up the rights to arbitration. That court says that goes to the arbitrator. I'm sorry, just in terms of exactly what you want us to do, you want us to reverse the district court, direct the court to grant the motion to send this to arbitration. Was there something else? No, it was just under Sections 3 and 4. Under the status of litigation, okay. Well, Section 3 under the FAA is to stay the pending litigation during the arbitration. Section 4 is to send it to arbitration. We made our motion under both sections of the FAA. And you want the district court to stay all of the litigation? Because aren't there some claims that are not arbitrable? No, all the claims are. There's only one claim in this case. Oh, I apologize. We can give you an update on the case. Credit I is the only defendant left in the case. All of the other defendants have been dismissed from the case. The case has been stayed. I cannot accept this one. Okay. That's correct. And the case has been stayed in the district court, so there's nothing happening. So it's up to the district court whether they just... You made this argument to the district court? Yes. So our opponent argues, well, you didn't make it in your opening brief. Our opponent made the argument... That's right. We made it under the law. Right. The opponent made the argument that we had assigned away our rights, notwithstanding what we think is a very clear survival clause, and that we had waived by litigation conduct, even though we had never engaged in any litigation conduct in this case. We responded and said, those are for the arbitrator to decide. So we did raise that issue at the very first time. The court also granted supplemental briefing, at which point both parties briefed this issue. Both parties had a chance to brief this issue. But if I understand correctly, you didn't raise the rent-a-center. We did raise... Rent-a-center had been decided by the time you were... Yes. ...in front of the district court. Oh, yes. You didn't raise it in your original papers. Is that right? No, no. Only in our opening brief. We said that you should send this to arbitration because these are credit reporting claims, and those are clearly within the scope of our arbitration clause. In response, they said, hold. There's no arbitration agreement here. You assigned it away, and even if you didn't, you waived by your litigation conduct. We said, wait. Both of those arguments also come within the arbitration clause. We have delegated all of those types of enforceability and interpretation issues. Arguably, the delegation didn't come in until the reply. That's right, and there was supplemental briefing. It wasn't directed on that issue, but the parties had the opportunity and did brief that issue, so it was addressed. We've now had full briefing in this court on that issue, too, which is a de novo issue. Again, the only argument is the same argument that was made in the lower court, which is that they argued you put the cart before the horse. There was no agreement. Even if you take up the survivability and assignment clause arguments, we think, as I said, with all due respect, they're meritless. We think we have a 100% clear survival clause. The whole survival clause, we have excerpted the one event that is relevant here, the transfer or assignment, but the whole survival clause can be found at Joint Appendix 71, and what it says is that this arbitration agreement shall survive, and then it lists three events, the termination of the account, bankruptcy, or a transfer or an assignment of the account to anyone else. In other words, the agreement makes entirely clear that no matter what event you might think otherwise might divest the parties of their arbitration rights and obligations to one another, those are going to survive, all of those. Well, is it, I mean, can't you read it the other way, too, and isn't, seems like a perfectly natural reading that the clause, the arbitration provision is going to survive, but it doesn't really speak to who will have the right to enforce it. In other words, Novick's not going to be free of it, but it doesn't exactly say that Credit One will continue to have the right to enforce it even after it's assigned its rights. With respect, we don't think that's a reasonable reading for three reasons, maybe four. First, it robs a survival clause of its essential element. A survival clause means that the obligations that exist today between the parties shall continue in effect, shall survive beyond these events. So the only thing that preexists those events are obligations between Credit One and the plaintiff, Ms. Novick. That is what survives. They're reading it counterintuitively to mean exactly the opposite of what a survival clause is there for. You put a survival clause in to make sure that these obligations in the contract we are signing today will stay in effect. They're reading it to say, no, no, what it's in there for is to show that these are actually going to continue to apply and be assigned down the line and removed from you and given to the next. Yeah, you're just saying that it renders the survival clause meaningless. Exactly. With regard to Credit One. And as to you- Why would it render it meaningless? It means that when Credit One assigns its rights, in that bundle of rights is the right to force Novick to arbitrate. That would presumably make them more valuable. Because that would be an assignment clause, Judge Harris. If you were trying to accomplish that, you would write it in an assignment clause, not in a survival clause. A survival clause is about the parties to the contract right now have rights and obligations. They will continue in effect. And if you accept, which we don't dispute, their background principle of law, that an assignment normally assigns all the rights down, you wouldn't need to write a clause to accomplish that. That would be the background principle of law. And if you were going to take a belt and suspenders approach, you'd do it through a much more obvious and clear way than counterintuitively doing it through a survival clause. The one thing you would do when the background principle of law is that an assignment means you've given away all your rights, is you want to make sure you've contracted around that and said, we have a survival clause. These continue to exist. I also think that the reason that that reading doesn't make sense is that what the plaintiffs are relying on is that last kind of clause of the third event in the survival clause, if you look at JA-71. And what that third event- Sorry, if I got away there. The third or assignment of your account to any other person, that does not modify the verb survive. That does not modify the phrase, the arbitration provision shall survive. Like the arbitration provision shall survive to any other person. It only modifies the third event. That might be a little confusing if you're only reading the excerpts in our brief, because we're only including the third event. But when you look at JA-71, there are three events. And that is only modifying where the transfer or assignment is. The second argument that they have- Oh, and the fourth argument I would have said why I don't think that reading is right is, with no surprise, neither the district court nor our opponent can point to any authority, any case, any treatise, anyone who has ever read a survival clause in this way to actually mean an assignment. We have such authority. Their second argument as to default, I think this court's precedent soundly rejects it. The district court's theory is that merely by selling these accounts, and at the time we sold these accounts in 2014 providing an affidavit attesting to the fact that we sold the accounts, that by putting in stream of motion a chain of events that ultimately ends in another party filing a litigation, we have somehow defaulted on our right to demand arbitration. Number one, Credit One never engaged in any machinery of litigation. Midland did. There had anything to do with that lawsuit. The only argument is that we provided affidavits about the sale when we sold the accounts. That's it. Number two, Credit One didn't delay in seeking its arbitration rights. The very first time the plaintiff asserted their FCRA claim saying that we failed to conduct a proper investigation of her dispute, we sought arbitration. All the defendants removed the case to federal court, but then we sought arbitration immediately. And because of that, they can't show any prejudice from anything that Credit One did. The prejudice is all from something that they argue Midland did in engaging in litigation. We couldn't have stopped that. We could not have barged into the Midland debt collection action and said, we're demanding to have this arbitrated. There was no claim against us to demand to be arbitrated. We weren't in the lawsuit at all. So for all those reasons, we think the district court's order should be reversed and that you should direct the district court to grant Credit One's motions under the FAA Sections 3 and 4. Thank you very much. I'm sorry, just on the stay, Section 3. Were you about to say it's up to the district court whether to stay the litigation, or do you want us to direct the entry of a stay? Well, I think, I apologize that we haven't gotten into this in the briefing. Sometimes district courts may, there is a principle, and I will confess that I don't know how the principle is applied in the Fourth Circuit, that sometimes if a court believes that it has resolved all of the issues in the case, they'll just dismiss it instead. Yeah, that's right. Do we need to get into that? When courts do that, honestly, it's to make it appealable, because otherwise it wouldn't be appealable while it stayed, and we have the whole appeal here right now. I don't know that that's going to make things any simpler. Okay, thank you. Thank you. May it please the Court, my name is Scott Morrison. I represent Ms. Novick. Ms. Novick brought a suit against Credit One for reporting inaccurate information about her after they had assigned away this account to a third party. That's the basis of the claim. The argument that we are wrongfully putting, that our argument fails because the issue of whether they still have a right or not is a, should be sent to the arbitrator is wrong in this context. Did you ever specifically challenge the delegation provision? We never specifically challenged the delegation provision. What we challenged So how do you get around the Rent-A-Center? Well, the Rent-A-Center, first of all, in Rent-A-Center there was no issue as to whether the parties had agreed to the clause or not. The issue in Rent-A-Center was whether someone would determine it was unconscionable. It's a different issue than what we have before the court today. What we have before the court, and every time they talk about the assignment, they have to revert back to talk about another document. The assignment is clear on its face. It's all right title and interest was assigned. To the extent that there was a survivor, however you read the clause, if you read it their way, they consciously and voluntarily turned around and wrote an assignment of all right title and interest. Either way, whether you agree with us how the clause is read, I don't think, as he said, that makes it senseless. What I think it's a recognition is that defendants in these type situations are very conscientious about and worried about the arbitration. So they added a specific provision saying, look, this doesn't go away just because we're not the Bennett relied on was the word or, that it wasn't intended to be a multi-party. If they make an assignment, it wasn't intended to be multi-party after the assignment. And then also the fact that it talks about when it's assigned to another person. So the fact that they included it doesn't mean that suddenly it's somehow different type of clause than anything else. But here's my point. Whether you read it our way or their way, if you read it their way, after they know that clause is there, the clause that they drafted, they execute a document saying we're giving up all of our right titles and interests, which would include that. That's a standalone document. And to the extent that they say, well, you have to read that in conjunction, keep in mind, the assignment didn't involve Ms. Novick. Ms. Novick wasn't a party to the assignment. This was an assignment that they were making to someone else. They chose to use those terms. So what the court, Judge Bennett, found was you assign away your rights under basic contract law. That means you're no longer a party to the contract. Under Maryland law, Julian v. Bonacici, which is a case we cite, it's basic that it eliminates any privity of estate or privity of contract once that assignment is made. So how do they, the only way that they get back to the clause in the contract is to simply say, well, somehow you have to read the assignment of all right title as being subject to a clause in the prior contract. Our position is no. You said all right title and interest. Whether that's what you look at, the four corners of that document, and you chose to give up that, those rights, whatever rights might have survived, whether there was a survival clause or not, you included those things. So we think that Judge Bennett was correct in viewing it as to whether or not there was a contract to arbitrate. Now, we cited I'm sorry. Are you arguing or is your understanding that the district court kind of did address this issue implicitly? Is that what you're saying? Well, I think what the district court did was they addressed the issue that first he had to determine whether there was an agreement to arbitrate. And we cite case law of the AT&T case that we cited in our brief. There clearly was an agreement to arbitrate. Between these parties or not. But there was at one time. Then you had a voluntary act on their part where they chose to terminate it on the basis of executing an assignment of all right title and interest. So I worry, I feel that this discussion, it's nobody's fault. It gets circular really fast. So why isn't it the case that there was an agreement, there was a valid agreement to arbitrate. There's now a question as to whether it's still enforceable in light of the assignment. But that's a question for the arbitrator. Well, because I think the basic is that it's under the AT&T case, for instance, whether there is a contract or not. Because there were intervening events that occurred. And I don't remember my cases as clearly as you do. But I thought that in the cases where we say, oh, no, there's this issue that's been reserved to the court and can't be delegated out, those are cases where it is unclear whether there was ever an agreement. Well, actually, the Peabody case, and we go into this in our brief, the Peabody case wasn't as straightforward as he said it was. What they decided was their procedural and substantive issues that should be addressed. And depending on how you characterize the issue, it determines who gets it. And we set forth in our brief that we think that that was properly applied here. He did not specifically cite Peabody, but the type issue that was before the court was the type under Peabody that would remain with the court. I mean, the basic issue is there's nothing, I mean, when you're talking about the arbitration and you have a voluntary relinquishment of any rights by executing an assignment, the idea that you get to go back to it after that act, you know, what's the point of the act then? I mean, what's the import of the act? They can't just ignore that they decided to give up those rights. That would be our response, but I think if you look at Peabody, like I said, it wasn't ironclad that if there's ever been an agreement and suddenly there's an issue that it definitely goes to the arbitrator. And Renner Center, like I said, there was no... I'm not saying, but are there cases, can you point me to cases where it is undisputed that there was a at one point at least an arbitration agreement between the two relevant parties and even so the court has held we can't give effect to a delegation provision? Your Honor, I don't think there's any factual similar to our situation. I do not believe that, and obviously I've tried to research and find cases, but I do think that, you know, the cases that they cite, for instance, are court cases. One of the cases that I would refer you to, you know, in their reply brief, for instance, they cited this McMahon-Byrider case, which is on page 10 of the reply brief. And in that case, unlike our case, the court decided whether there was still an enforceable agreement. And in that case, contrary to their clause here, what they said there was, the rights and responsibilities afforded to seller under this arbitration agreement survive any assignment of the contract by seller, and the seller can enforce this arbitration agreement in the event of a dispute arises after the assignment. The reason I point that out is that's very specific and clear type of... that they do not have here. But that's the case. They go on to say that they're the same. They're not the same. If you compare those, you know, they also cite the Boehm case. I mean, I guess by negative inference, Your Honor, there are court cases that decided this specific issue without getting into whether it should have been sent to the arbitrator or not, but there's clearly case law where they address this issue. The Boehm case that they cite was a case where they say it's similar, but in Boehm what happened was, I was a party to a contract, I assigned my rights, and then the other party tries to enforce the arbitration against me and my defenses. You can't enforce the arbitration because I assigned out my rights. So it's got nothing to do with... I mean, it's almost the reverse of our situation. But the point is, there are these cases that have addressed this issue, not specifically as you ask, but clearly courts have taken this under their jurisdiction and felt compelled to rule on it. And we also believe they, in essence, asked the district court to do this. I understand that they're saying, well, we didn't raise a delegation. They knew that there was an assignment by them. And speaking of the assignment where they say, well, you know, the alternative basis for the court was that they defaulted, not waiver under state law, but they defaulted by participating. And there's two issues there. The first issue is the default under the agreement where they participated in litigation. They say, well, all we did was do affidavits, and those were two years prior to the litigation. But the affidavits themselves, if you look at the record, 99 specifically recognized that there's going to be a court proceeding. It says it's being executed for the purposes of the benefit of a court to review these items. So they recognized that there was going to be a court. But the other thing that's this dichotomy where they want this arbitration clause to now split between multiple parties, what do we do here? Because keep in mind, in this case, Midland, the eventual assignee, had also raised the arbitration. They withdrew their motion to compel arbitration. But in addition, they had also sued Misnovic and lost. So they sued on a contract. They lost. It's no longer enforceable by them, but they want to say that they can come back in and make it enforceable as between Credit One and Misnovic. So the idea of this dichotomy that you can split arbitration agreements between parties when it's in practice, when you have this situation where Midland recognizes they lost the right to enforce it. But if the delegation provision is valid and you aren't contesting the validity of it, why under Renda Center does that then not put the issue that you're seeking to argue in front of the arbitrator? I'm confused, I guess I have to say, because I'm trying to figure out, since you're not contesting the validity of the delegation and the delegation clause is essentially the same one as Renda Center, it looks like they were trying to parrot it, in fact, why doesn't this just go to the arbitrator? There's two factual distinctions, like I said. In Renda Center, it wasn't that Renda Center had it signed out. Well, yeah, but does that matter if you have a valid delegation clause? And you haven't contested that. It seems to me you can't get to the assignment issue in court unless the delegation clause is defective. And I guess what you're saying is the delegation clause is inapplicable. But it seems to me that's an end-around to challenging the validity of the delegation clause in the first place. Your Honor, if we didn't have any facts that they had given up their rights under the contract, I would agree with you. But the factual difference here, where they have given up their rights, it's a reset. Then they still have to show that they have an agreement in place. You have the facts where they've given up these rights under this contract by a voluntary assignment of all-right title. And now they come back to court and say, well, we'd like you to find that we still have rights, that we're a party to this contract. I think that's the distinction I can offer you, Your Honor, where you basically have to come back in and they're in the same position as any other party. Yes, there's a contract that provided certain rights. They withdrew from that contract. Now they want to come back into court and say they should be able to enforce the contract. Our position is then they start at square one. They have to show that they have an agreement between the parties to arbitrate. Not that there was an agreement in the past. They have to show that they have a present agreement. When they filed this motion, it was post their assignment of all the right title and interests. And showing whether you have an agreement or not is a court decision as opposed to an arbitrator decision. Maybe you can direct me to where in the district court opinion, the district court talks about the interplay between the Supreme Court case and the arguments you're making here. I see the district court seems to have bought what you were selling. But I don't see how the district judge actually dealt with the Supreme Court case. I'm talking about rent a car, rent a center, whatever. Sure. And my response Does it cite that case, for example? I don't believe it does, Your Honor. But I think what it cited was the case law that says in determining that the burden of showing that there's an arbitration agreement falls upon the party moving. And that's and so the court then examined that the party was before it was coming in and saying that it could enforce Your argument that they have now they don't have any rights. There is no longer an arbitration agreement. That's what they accept. Well, they accepted that they'd given up those rights. And now they were coming in and asking the court to find that they still had the right to be. Well, and respectfully, Your Honor, if I have a piece of property and I assign it out, give all right, title and interest. And two years later, I decide to go on that property. I can't go back and say, well, I had the property at one time. And therefore, I have some present rights to it. I have to show some independent basis that I would have the right to it. I think that's the analogy is you can't just you know, I couldn't go reoccupy my property because at one time I had rights to it after I voluntarily gave up those rights. What's the meaning of the survival clause then? The survival clause was strictly to say that the arbitration agreement itself would survive the assignment. The only reason I can tell you is I think there is a focus on arbitration by credit card companies and other banks that they're concerned about it. I don't know what the basis of their concern was, but I think if you look at that clause, it does not say what they're saying it says because it basically says that if we give it to another person, it survives. To another person and also what the district court relied on was the disjunctive or as opposed to conjunctive that, that it's sometimes that all of a sudden this clause would apply. And maybe we'd have a different situation if it said this clause will apply to us, successors and our assigns. In other words, but they drafted the clause. They've made it disjunctive. There's not, if you look at those words, there's nothing in those words that indicate that there's going to be a split off and there's going to be, you know, multiple parties suddenly to this bilateral contract. So your argument then is this arbitration provision shall survive any transfer of assignment does not indicate that it shall survive with respect to the credit one's rights. Right. It doesn't say it will inure to the benefit of the assignor. It just says, look, the assignee will be protected by this clause. And again, just going back to, you know, the alternative, you know, I do believe that if you find it was supposed to be delegated, then the issue of defaults also, but I think looking at the default decision, the idea that they didn't anticipate that it would go to court is clearly contradicted by their own assignment or their own affidavits and assignments where they recognize it's going to be before court. And respectfully, I understand there's favoritism towards arbitration, but I do believe that the first step is determining whether this particular party has an enforceable agreement. The severability clause is at JA-71. Can you explain to me one more time what your argument is here? Yes, ma'am. Two seconds. It's the very bottom of JA-71. Okay. Just looking at three little I. Yes, I'm looking at it. Any transfer of assignment or any impounce to any other person, any portion is deemed invalid. Oh, I apologize. Okay, so all it says there is any transfer or assignment of your account or amounts owed. The remaining, well, it goes into the remaining portions. My point is that any transfer or assignment of your account, again, says nothing. I mean, it recognizes that one, it can be transferred or assigned and simply says that this won't be, that this particular clause will not be affected by that event. It says nothing about if we assign all of our right, title, and interest under this agreement, which is what they did. There's nothing, and again, if they're right that this clause gave them some surviving rights and then they turn around and sign something with full knowledge that they think this preserves rights to them and sign something saying I give up all my rights, how is that consistent? And once they've assigned it, they do have... Arbitration provision, though, that's being, that's surviving. Correct, the arbitration, but the question is who are the parties to the arbitration, and that's where you go back to who the parties are to it, and at that point in time when they assign all their rights, well, first of all, their assignment, they gave up any rights to the contract, and then they went further and said we're giving up all rights. I mean, if you look at that McMahon case where they specifically addressed the type issue where they're trying to resolve or retain those rights, there's nothing in here that says this is intended to and it doesn't affect the validity of this clause for the assignee. So do you have case law that interprets what I regard as the holding and rent-a-center with a severability clause like this that goes in your favor? I'm out of time. Like I said earlier, I don't have any case law that has interpreted. I have the case law that they actually cite where the courts have engaged in a determination as to whether or not an assignment would affect, for instance, the Bohm case, the McMahon case, those cases where the courts have engaged in it. I don't recall, I don't believe they went into do we have the right to do this or not. Thank you very much. Thank you, Your Honors. So maybe you can talk me through this severability clause. Because that seems to be the key to what your colleague is saying on the other side, I guess. Well, with respect, I don't think that actually, I mean, I do want to address that. I don't want to not address it, but what I think resolves it is his concession that they have never and are not in this court raising any specific challenge to the delegation clause. And under rent-a-center, that's it. Right, but I think what he's arguing, if not explicitly, inferentially, is that he has a right, as per rent-a-center, to challenge the validity of the agreement in court, the agreement as a whole. That's true. And what he's trying, I think, to do is to come around the delegation clause and say we have a validity issue of the whole agreement because it's gone as to credit one. It no longer exists. So your arguments are almost on parallel track, aren't they? No, I'll address that directly so that you know the two responses. The first is, under rent-a-center, a challenge to the contract as a whole is not a specific challenge to the delegation provision. His argument is that you assigned away all right, title, and interest in the account, and that that means you assigned away all rights and obligations in the agreement that pertains to the account. And then the next step, that necessarily includes the delegation clause. That's the same type of argument the Supreme Court says you can't do in rent-a-center, pointing to cases like PrimaPaint, saying that when the argument for the claimed invalidity of the specific arbitration agreement is the same basis as the claimed invalidity for the entire contract, that's for the arbitrator to consider. But I do want, there's a second response here that I think is much more direct from your cases from Peabody Cole itself. His argument is that this, you know, whether or not the parties even had an agreement to arbitrate anymore is one that the courts have to decide. You can't give that away. Even though this argument clearly is an argument about whether it is continue, there is a continued enforceability, you can't give that away. And what Peabody says, in a case that doesn't even involve a delegation clause, says that the argument, once the parties concede that they validly entered into the agreement that contains the arbitration clause, then any issue about whether that contract later terminated, in that case it was because of a corporate succession, that's not, that does not implicate the contract formation principle of the Supreme Court's cases. That implicates the duration of the arbitration right. And that's a classic issue for the arbitrator. So, on the survival clause, my response, Judge Motz, is the arbitrator will consider that. We agreed to delegate that to the arbitrator. The arbitrator has to consider that as an issue. This is all goes to, according to you, to duration. It's for the arbitrator. That's right. Duration or termination. What I would say is, using the words of our arbitration agreement, the enforceability of it. It also goes to the interpretation of this agreement because it's about the survival clause, which is what you wanted me to address. And so that's the merits argument on the survival clause. And I think the merits argument on the survival clause is actually pretty simple. The language at the bottom of JA 71 says that the arbitration provision shall survive. And then it lists three events. A survival clause, the very essence of a survival clause, is to say that rights that exist right now are going to continue in effect after these specified events. The rights that exist right now, when we enter into this contract, are the arbitration rights and obligations between Credit One and Ms. Novick. Those will survive termination. A simple termination. If the account is terminated and the contract is terminated, it will still be in effect. And yet, my opponent's argument is that when we got to transfer our assignment, which also under background principles of assignment law would terminate the account relationship and the contract, that in that instance, no, no, we didn't want to keep our arbitration rights anymore. Even though we sell charged-off debt, even though these types of disputes very plainly arise after debt is sold, this says that it shall survive the transfer or assignment. It shall survive bankruptcy. It shall survive anything. All of these arbitration rights and obligations between the parties survive. He hinges, Judge Motz, on the very last clause, which is on the second line of the survival clause, of event three. He wants to read at the beginning of the survival clause, this arbitration provision shall survive, and then modify all the way to the end of event three to any other person. That's not how it reads. That is a modification of the transfer or assignment in event three. It is not a modification of this arbitration provision shall survive. Where's the language that the district court relies on? The we and our. That's the introduction to the agreement. Just the fact that the agreement is we, us, or, and as to that, we would say that in legal usage, I mean, we quote a Law Review article. You can also look at Brian Garner's Dictionary of Modern Legal Usage. Like, or frequently is inclusive, not exclusive. Regardless, even if you look at that, look at the survival clause. The arbitration provision shall survive any transfer or assignment of your account or any amounts on your account to any other person. It doesn't say we or us anywhere in that. So the district court says, look, the we that is entitled to compel arbitration is credit one, its successors, or its assigns. And so the district court took from that, this contract does not contemplate a situation in which 10 different entities are entitled to compel arbitration. It's only one person or one entity that gets to compel. But you're saying that or in this case meant and. It's the inclusive use of or. And regardless, it's not in the survival clause that we're talking about. I know it's not, but I think there is, at which point you would have maybe two clauses that point in different directions. But there's. And if that's true, district court relied on these other three words you're talking about. And I know I'm over time, but let me give one more answer to that. If you look back at Peabody, once you find that the parties validly entered into an agreement, now the presumption in favor of arbitrability. I'm not saying it doesn't go to the arbitrator. I'm just saying sort of on the merits. What I meant to say is that then the presumption of arbitrability kicks in as to what is arbitrable. And if you have some confusion over the survival clause, now you need to read it in favor. And the presumption of arbitrability, you think, because this seems like an odd case to me under the presumption only in this one respect. Someone has to arbitrate. There's no question that there is an arbitration clause that Novick is going to have to arbitrate her claims. The only question is how many different entities can make her arbitrate. So I'm not sure that the presumption of arbitration is really implicated here in the same way. No one is arguing that there is no binding arbitration agreement. The only argument is about which parties are, which entities are parties to that agreement. So is it your understanding that the presumption in favor of arbitration requires us to always to tilt in favor of maximum number of parties being bound by an arbitration agreement? No. And two, I do see what you're saying, Judge Harrison. Two responses. First, we don't think you ever need to get to that, I think, if there's confusion. But as to that, what I'm saying is I think Peabody is pretty instrumental on this. Peabody Cole says we as an institution are no longer bound by arbitration because we divested the entity that was subject to the arbitration clause that subjected all of its related parties to it. This court said the parties agreed that the original agreement to arbitrate was validly entered into. Once that happens, what the Fourth Circuit said in Peabody is that now the presumption of arbitrability kicks in, and that is why it's now an arbitrable dispute. That has to do with which parties are. So as to the answer to your question, I don't know that there's – I'm not arguing that there's some presumption that you always have to make the maximum number of parties. I am just saying when we think it's a very clear survival clause and that they're reading to read it counterintuitively to say it's what happens on assignment as opposed to what survives, it's just wrong. But if you found any sliver of ambiguity in there, we think a presumption of arbitrability resolves it. Thank you, Your Honor. Thank you very much. We will ask our clerk to adjourn court and then come down and greet the lawyer.
judges: Diana Gribbon Motz, Barbara Milano Keenan, Pamela A. Harris